IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| NASIR K. GOODE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 1:23-cv-1274 (LMB/IDD) |
| | ) |
| CHADWICK S. DOTSON, | ) |
| | ) |
| Respondent. | ) |

MEMORANDUM OPINION

Nasir K. Goode ("petitioner" or "Goode"), a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his January 10, 2011 convictions in the Circuit Court for the City of Petersburg, Virginia, for attempted robbery and conspiracy to commit robbery. On January 2, 2024, respondent filed a Rule 5 Answer and a Motion to Dismiss with supporting briefs and exhibits. [Dkt. Nos. 13–15]. On April 24, 2024, respondent amended his response by submitting an additional exhibit. [Dkt. No. 31].[1] Petitioner was advised of the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), in accordance with Local Rule 7(K), [Dkt. No. 16], but he has not responded.[2] For the reasons that follow,

---

[1] On April 9, 2024, the Court directed respondent to file a supplemental response because one of his exhibits was incomplete. The response was filed on April 12, 2024, and petitioner was afforded 21 days to file a response.

[2] Petitioner sought and was granted an extension of time to respond until June 19, 2024. [Dkt. No. 33]. Thereafter, he sought and was granted two additional extensions of time to respond until August 26, 2024, [Dkt. No. 35], and then to September 27, 2024 [Dkt. No. 42]. On September 23, 2024, instead of filing a response, petitioner requested that counsel be appointed to assist him with his response. [Dkt. No. 43]. The Court denied his request on September 25, 2024, explaining that he is neither entitled to appointment of counsel nor has he shown exceptional circumstances justifying appointment of counsel. [Dkt. No. 44]. Petitioner filed a

respondent's Motion to Dismiss will be granted, and the petition will be dismissed with prejudice.

**I. Procedural History**

On December 10, 2010, a jury sitting in the Circuit Court of the City of Petersburg found petitioner guilty of attempted robbery in violation of Virginia Code §§ 18.2–58, 18.2–26; and conspiracy to commit robbery, in violation of Virginia Code §§ 18.2–58, 18.2–22. [Dkt. No. 15-1]. The jury acquitted him of first–degree murder and burglary while armed and the two related firearm offenses. Id. The jury fixed his sentence at five years in prison for conspiracy to commit robbery and eight years in prison for attempted robbery. Id. On January 10, 2011, following the jury's determination, the circuit court imposed a total sentence of 13 years' incarceration.

Petitioner, by counsel, filed a petition for appeal in the Court of Appeals of Virginia arguing that the evidence was insufficient to support either conviction. [Dkt. No. 28–2] at 11. The court denied his petition for an appeal on September 20, 2011, finding the evidence sufficient to sustain his convictions. Id. at 1. The court summarized the evidence as follows:

> This case stems from the murder of George Vaughan, who was shot and killed in his house during an attempted robbery. The Commonwealth charged appellant with first–degree murder, burglary, using a firearm in those felonies, conspiracy to commit robbery, and attempted robbery. The jury found appellant guilty of

---

Motion to Reconsider the Court's Order, which the Court denied on October 18, 2024. [Dkt. No. 46]. Although petitioner claimed that he needed counsel to present arguments on "newly discovered evidence," it was clear that he was aware of such evidence as early as January 2023, eight months before he filed his petition for writ of habeas corpus. Having never raised the issue of newly discovered evidence in his numerous extension requests, the Court denied his Motion to Reconsider. [Dkt. No. 46]. Most recently, on November 4, 2024, petitioner filed a "Response to Opposition for Counsel," in which he argues that this Court's February 28, 2024 Order returning physical evidence from his trial to the state court clerk is "new evidence that was clearly discovered after petitioner filed his habeas in this court." [Dkt. No. 47] at 2. The items were pieces of evidence admitted at petitioner's trial on December 9-10, 2010, over thirteen years ago, and therefore are not newly discovered evidence for which he needs the assistance of appointed counsel.

2

conspiracy to commit robbery and attempted robbery and not guilty of the other charges.

Codefendants Leslie Puryear and Eric Harrison testified for the Commonwealth. Puryear testified that on April 25, 2010, he discussed a plan with appellant to rob the victim. Puryear, who sold prescription drugs to the victim, said appellant had previously accompanied him to the victim's house. Puryear told appellant that the victim kept a lot of money in his home. Puryear said he, appellant, and Harrison were armed and parked in a nearby motel lot. They walked to the victim's house. Puryear gained entry by saying he had pills to sell while appellant and Harrison waited outside. While in the house, Puryear sent a text message to appellant and Harrison advising them to enter through the back door. Puryear claimed he fled the house when he heard "tussling" and gunshots in the back of the house.

Harrison corroborated much of Puryear's testimony. According to Harrison, the three-armed men parked at the motel and walked to the house. Harrison and appellant waited outside while Puryear went inside. According to Harrison, he and appellant entered the house after receiving Puryear's signal and hid in the bathroom. The victim approached the bathroom carrying a handgun, and appellant, who wore latex gloves, confronted, and wrestled with the victim. Harrison said he was pinned by the bathroom door. When he finally exited, he pulled out his gun and accidentally shot himself when he bumped into appellant and the victim. Harrison testified that appellant pushed the victim onto the floor and shot him.

Shirley Hutt, Puryear's girlfriend, testified that Puryear came to her home around 2:20 a.m. on April 26, 2010. She said appellant and Harrison arrived a few minutes later. Hutt tended to Harrison's wound. She also testified that appellant described in detail how he and Harrison fought with and killed Vaughan.

Detective Nemecek interviewed appellant around 8:00 a.m. the day after the murder. Appellant denied any involvement in the crimes and told the detective he was in Hopewell the entire night.

Marcel Corbell lives near Puryear and had known him for a few months at the time of the murder. Corbell had known the victim for seven or eight years. Corbell testified that he introduced Puryear to the victim a few weeks before the murder.

Corbell first met appellant and Harrison at Puryear's residence around 10:30 p.m. on the day of Vaughn's death. Appellant asked Corbell for latex gloves so he could package drugs, and Corbell gave him a pair.

The evidence recovered from the crime scene indicated Harrison and Puryear left DNA evidence in the house. Tests did not identify appellant as a contributor to any of the recovered evidence. The Commonwealth also introduced a videotape from a convenience store showing appellant, Puryear, and Harrison inside the store around 3:30 a.m.

Appellant testified that he and Puryear sold drugs to supplement their income and that on the day of the murder, he saw Puryear outside his house in Hopewell. Puryear mentioned pills, and appellant told Puryear he was interested in buying some. Puryear asked appellant to give him money to purchase them. Appellant said

3

he agreed to do so, but wanted to ride with Puryear to make sure Puryear did not abscond with the funds. According to appellant, the men parked at a motel in Petersburg and Harrison and Puryear exited while he waited in the vehicle. When the men returned to the vehicle, Puryear said, "Dude ain't right," and he returned appellant's money. They drove back to Puryear's house, where appellant waited outside, then they went to Hutt's house. Appellant admitted lying to the detective when he claimed he was in Hopewell all night, and he conceded telling his girlfriend during a jail visit to lie for him at trial. When asked why he remained with Puryear and Harrison for several hours after the murder, appellant claimed he was unaware that Harrison had been shot or that Puryear and Harrison killed the victim during an attempted robbery. During cross-examination, appellant initially denied speaking by telephone with Puryear on the days before and after the murder, but after being shown telephone records, appellant conceded that he and Puryear spoke by telephone on six separate occasions during that two–day period.

Id. at 1–3.

Petitioner, by counsel, filed a petition for appeal in the Supreme Court of Virginia raising the same sufficiency issue, which the court refused on October 12, 2012. [Dkt. No. 31–1].

Nearly 10 years later, on or about July 15, 2022, petitioner, proceeding pro se, filed a petition for a writ of habeas corpus[3] in the Petersburg Circuit Court, alleging the following claim:

> Petitioner was denied Equal Protection Under the Due Process Clause of the Federal Constitution when Commonwealth Suppressed Exculpatory and Impeachment Evidence.–Brady v. Maryland, 373 U.S. 83 (1963); U.S. v. Agurs, 427 U.S. 97 (1976); and U.S. v. Bagley, 473 U.S. 667, 676 (1985).

Nasir K. Goode v. Va. Dep't of Corrs., Harold Clarke, Case No. CL22–566–00.

The exculpatory evidence claim is based on a six–page document that petitioner asserts was provided to him on "8–13–21." The document appears to be part of an online edition of an article from a newspaper; the document is not complete, dated, or authenticated. The undated article references Petersburg Bureau of Police Detective Roosevelt Harris. Harris testified at petitioner's trial that he was responsible for processing the crime scene and obtaining "any

---

[3] The state petition was dated July 15, 2022, and the circuit court found that the petition was filed on about July 15, 2022. [Dkt. No. 28–4] at 2.

4

physical evidence and property packaging to be sent to the state lab for analysis." [Tr. 12/9–10/2010 at 195–96]. The undated article states that Detective Harris was reprimanded between 2004 and 2017 for "improperly handling or losing evidence and was removed as supervisor of the department's evidence and property room after an internal audit in 2015." [Dkt. No. 28–5] at 20. Petitioner asserts the information should have been disclosed and could have been used to impeach Harris at his trial.

On December 22, 2022, the circuit court dismissed petitioner's habeas petition as untimely and held, in the alternative, that the claim of newly discovered evidence had no merit. [Dkt. No. 28–4] at 9–18. On February 26, 2023, petitioner filed a petition for appeal in the Supreme Court of Virginia, [Dkt. No. 28–5], which refused the petition by an order dated August 15, 2023. [Dkt. No. 28–5] at 1.

On September 8, 2023, petitioner, proceeding pro se, filed his federal habeas petition in this Court. The federal petition raises one claim: "Petition[er] was denied Equal Protection Under the Due Process Clause of the Federal Constitution when Commonwealth Suppressed Exculpatory and Impeachment Evidence."[4] [Dkt. No. 1] at 5.[5]

### III. Statute of Limitations

Respondent seeks dismissal of the federal habeas petition as untimely. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petition for a writ of habeas corpus

---

[4] The federal petition was filed on September 20, 2023, but the envelope used to file the petition indicates it was placed in the prison mailing system on September 8, 2023. [Dkt. No. 1–2]. See Houston v. Lack, 487 U.S. 266, 276 (1988).

[5] A district "court must consider claims as they are presented in the petition, reviewing them under the applicable standard" and it is "the district court's duty to consider only the specific claims raised in a § 2254 petition." See Folkes v. Nelsen, 34 F.4th 258, 269 (4th Cir. 2022) (citations omitted); Frey v. Schuetzle, 78 F.3d 359, 360–61 (8th Cir. 1996) ("[D]istrict courts must be careful to adjudicate only those claims upon which the petitioner seeks relief and take care not to decide claims upon which the habeas petitoner never intended to seek relief.").

5

must be dismissed if it is filed more than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the U.S. Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)–(D). This period generally begins on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" and excludes "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(1)(A), (d)(2).

Petitioner's direct appeal concluded on October 12, 2012, which makes his convictions final for purposes of applying the federal habeas statute of limitations 90 days later—January 10, 2013. See Gonzalez v. Thaler, 565 U.S. 134, 149 (2012) (holding that, under § 2244(d)(1)(A), a judgment becomes final "when the time for pursuing direct review in [the Supreme Court], or in state court, expires"). Petitioner had one year from that date, or until Friday, January 10, 2014, to file his § 2254 petition. Absent statutory or equitable tolling, the federal petition is untimely.

   A. <u>Statutory Tolling</u>

In calculating the one-year period, the Court must exclude the time during which properly filed state collateral proceedings are pending. See 28 U.S.C. § 2244(d)(2); Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005) (determining that the definition of "properly filed" state collateral proceedings under § 2244(d)(2) is based on the applicable state law as interpreted by state courts). Petitioner's state habeas petition, which was filed nearly 10 years after his convictions became final, was dismissed as untimely, citing Virgina Code § 8.01-654(A)(2), and as having no merit. The Supreme Court of Virginia refused the petition for appeal in a summary order, which rendered final the lower court's decision that the state petition was not properly

6

filed.[6] See Pace, 544 U.S. at 417 (finding petitioner not entitled to statutory tolling when his state habeas petition was dismissed as untimely); Artuz v. Bennett, 531 U.S. 4, 8 (2000) (explaining that a state collateral proceeding is not "properly filed" if it is filed untimely). As the Fourth Circuit has explained, "[i]n Artuz, the Supreme Court held that time limits on state petitions are 'condition[s] to filing,' and that an untimely petition would not be deemed 'properly filed.'" Escalante v. Watson, 488 F. App'x 694, 697 (4th Cir. 2012) (quoting Artuz, 531 U.S. at 11). "When a state habeas petition is denied for being time–barred, it is not considered 'properly filed' and the petitioner is not eligible for statutory tolling." Tomikel v. Clarke, No. 2:18cv636, 2019 U.S. Dist. LEXIS 161196, *7 (E.D. Va. June 6, 2019), report and recommendation adopted by, 2019 U.S. Dist. LEXIS 157144 (E.D. Va., Sept. 13, 2019), appeal dismissed, 795 F. App'x 205 (4th Cir. 2020).

It is of no moment that the circuit court made alternative holdings—that the newly discovered evidence claim was untimely, and that it had no merit—when it dismissed the state habeas petition. Where a state court "finds procedural default," regardless of whether it alternatively discussed the merits, the discussion of the merits does not waive the procedural default, and the cause and prejudice standard for defaulted claims in Wainwright v. Sykes, 433 U.S. 72 (1977) is still applicable. Wainright, 433 U.S. at 87 (the prisoner in a federal habeas corpus proceeding must show cause for state procedural waiver and actual prejudice); Davis v. Allsbrooks, 778 F.2d 168, 175 (4th Cir. 1985).[7] "The policies that prompted the holding in

---

[6] See Ylst v. Nunnemaker, 501 U.S. 797, 803–04 (1991) (holding that when a state appellate court affirms a lower court decision without reasoning, the court may look through the later, unreasoned, summary disposition and focus on the last reasoned decision of the state court).

[7] "[A]n alternative merits determination to a procedural bar ruling is [also] entitled to AEDPA deference." Stephens v. Branker, 570 F.3d 198, 208 (4th Cir. 2009). Under the AEDPA, a federal court can grant relief only if

7

Wainwright are equally applicable whenever a state court relies on its procedural rule and are not vitiated merely because a discussion of the merits provides an alternative ground." Id. (citing Phillips v. Smith, 717 F.2d 44, 48–49 (2d Cir. 1984)).

> The procedural rule deserves no less respect because it is cast in the form of an alternative holding. "An alternative holding has the same force as a single holding; it is binding precedent." [United States ex rel. Caruso v.] Zelinsky, 689 F.2d [435,] 440 [(3d Cir. 1982)]. A state court's discussion of the merits in the alternative does not detract from the validity of its procedural ruling. It merely reflects the natural tendency of a court to marshal every argument possible in support of its position.

Davis, 778 F.2d at 175. Because there were no properly filed state collateral proceedings, petitioner is not entitled to statutory tolling.

### B. Equitable Tolling

In the portion of his federal § 2254 petition labeled "Timeliness of Petition," petitioner entered, "Newly Discovered Evidence," [Dkt. No. 1], which the Court interprets as an assertion of equitable tolling,[8] and that his time to file the federal petition did not start to run until August

---

(1) the state court adjudication of the issue on its merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." [28 U.S.C. § 2254(d)]. Further, even if an error is identified, habeas corpus relief can only be granted, under the second step of the AEDPA analysis, if the error had a "substantial and injurious effect or influence in determining the jury' verdict." Kotteakos v. United States, 328 U.S. 750, 776 (1945). Finally, the state court's factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

Stephens, 570 F.3d at 207.

[8] In the brief petitioner attached to his petition, he references Hicks v. Dir., Dep't of Corr., 768 S.E.2d 415 (Va. 2015). [Dkt. No. 1] at 22, n.1. Hicks involved an alleged newly discovered exculpatory evidence claim and held that "the tolling provision of Code § 8.01-229(D) is applicable to the limitations period of" the state habeas statute of limitations but affirmed the circuit court's denial of relief because Hicks failed to establish materiality. Id. at 420 (citing Brady v. Maryland, 373 U.S. 83 (1963)).

13, 2021, because that is the date when "the factual predicate of the claim could have been discovered with due diligence." McQuiggin v. Perkins, 569 U.S. 383, 388–89 (2013) (citing 28 U.S.C. §2244(d)(1)(D)). To be timely, assuming equitable tolling applies, petitioner's federal habeas petition must have been filed on or before Monday, August 15, 2022. It was filed more than a year later, on September 8, 2023.

To be entitled to equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace, 544 U.S. at 418). A petitioner generally must specify the steps he took in diligently pursuing his federal claim. Spencer v. Sutton, 239 F.3d 626, 630 (4th Cir. 2001). In addition,

> [t]he word "prevent" requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.

Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000); see also Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003).

Here, petitioner's newly discovered evidence is an undated article that he claims he did not receive until August 13, 2021. [Dkt. No. 28–5] at 5–7; however, he waited another 11 months to file his state habeas petition in circuit court on July 15, 2022, meaning that a total of 336 days passed between August 13, 2021, and July 15, 2022, which left him with 29 days of the one-year period in which he had to file his federal petition. The circuit court dismissed his state habeas petition as untimely and, on August 15, 2023, the Supreme Court of Virginia issued a summary order that refused petitioner's petition for appeal from the circuit court's denial of his state habeas petition.

9

Nothing in the record indicates that petitioner could not have filed his federal petition when he filed his state petition. Under Rhines v. Weber, 544 U.S. 269, 278 (2005), petitioner could have filed for habeas relief in both state and federal courts and sought a stay and abey order to pause the federal proceeding while he sought to exhaust his claim in state court; however, he did not file his federal petition when he filed his state petition, which shows a lack of diligence. Because petitioner was not diligent in pursuing his rights, he is not entitled to equitable tolling for the time during which his state petition was pending. See Pace, 544 U.S. at 418 (rejecting petitioner's claim that he was entitled to equitable tolling for the time during which his untimely state petition was pending because petitioner sat on his rights). To the extent he may claim ignorance of the law, the Fourth Circuit has explained that even if a pro se petitioner "did not understand how the statute of limitations operated in his case . . . ignorance of the law is not a basis for equitable tolling." See United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004).

Petitioner has failed to show that he was prevented from timely filing by extraordinary circumstances beyond his control or that he diligently sought collateral relief. Accordingly, equitable tolling of the statute of limitations is not merited. Based upon the foregoing, the petition was not timely filed and must be dismissed.

### C. No Merit

Even if the petition were not time-barred, the sole issue petitioner cites as the basis for his collateral attack—the alleged misconduct of Detective Harris—is meritless because there is no evidence in this record that the misconduct was connected to petitioner's case or that he was prejudiced, which must be shown to prove a Brady claim. [Dkt. No. 1] at 18. Petitioner asserts prejudice because he was denied the opportunity to impeach Detective Harris; however, Harris' role in the trial was limited to chain of custody issues and, in that regard, his testimony about

petitioner was exculpatory. At numerous times during his direct examination and cross–examination, Detective Harris testified that, except for a surveillance video that showed petitioner in the company of the two co–defendants a few hours after the offenses were committed, the items of evidence he introduced had no connection to petitioner. [12/9–10/2010 Tr. at 67, 69–71]. "To be prejudicial under Brady, the information must be material—that is, there must be 'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" United States v. Thomas, 835 F.3d 730, 735 (7th Cir. 2017) (quoting United States v. Bagley, 473 U.S. 667, 681 (1985)); see also Strickler v. Greene, 527 U.S. 263, 292–93 (1999) (finding no prejudice to support a Brady claim because ignoring the witness's testimony, other evidence in the record, on its own, supported the conviction). Here, impeaching Detective Harris would not have resulted in a different outcome because petitioner's testimony, as well as that of the co-defendants, placed all three of them together at the victim's house and the convenience store that evening, and petitioner admitted that his original version of events placing him in Hopewell, Virginia "was a lie." [12/9–10/2010 Tr. at 260].

   With regard to a firearm recovered from petitioner's residence, Detective Harris testified that there was "nothing connecting" that firearm to the offenses and that the firearm actually belonged to petitioner's mother. Id. at 65. When asked if he had found any forensic evidence from the firearms, such as DNA or fingerprints, that connected petitioner to the scene of the crime, Detective Harris stated, "No. I didn't." Id. at 72. Defense counsel actually emphasized Detective Harris's testimony in his closing argument and, after reminding the jury of such testimony, trial counsel reiterated that Detective Harris had found "nothing" that connected petitioner to the scene of the crime. Id. at 308–09. Based on the role that Detective Harris played in petitioner's trial, any new impeachment information about Harris would not have helped petitioner and therefore does not constitute Brady material. Accordingly, petitioner's claim has

no merit. Strickler, 527 U.S. at 281–82 (1999) (to prevail on a Brady claim, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."). The state courts came to the same conclusion, [Dkt. No. 28–4] at 9–18, and that conclusion was neither contrary to, nor involved an unreasonable application of, clearly established federal law as determined by the U.S. Supreme Court. See Stephens, 570 F.3d at 207.

### IV. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss [Dkt. No. 26] will be granted, and the petition will be dismissed by an order to be issued with this Memorandum Opinion.

Entered this 15th day of November 2024.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge